I. INTRODUCTION
This matter comes before the court for decision after trial. Plaintiff Janine Leaper (taxpayer) appeals a Multnomah County Board of Property Tax Appeals (BOPTA) determination that the 2005-06 real market value (RMV) of her land was $238,000 and that the RMV of an addition to her residence structure, added as exception value, was $32,000. Taxpayer's Complaint alleges that the RMV of the land is $37,409, and, at trial, taxpayer asserted that the RMV of the addition is $0. Intervenor (the county) requests that the roll value of the land be upheld and asserts that the RMV of the addition is $36,000. The RMV of the original residence structure is not in dispute. *Page 390 
 II. FACTS
The property at issue in this appeal is a 1.13-acre, pie-shaped parcel of land and a 486-square-foot addition to taxpayers' house that was completed sometime in early 2005. The property, including the improved residence structure, sold in March 2005 for $481,000. The value of the house as it existed before the addition is not in dispute. BOPTA set the roll value of the property at $477,750 ($238,000 in land and $239,750 in structures), including the roll value of the addition at $32,000. The county now requests the total value be set at $481,750.
Taxpayer filed an appeal with the Magistrate Division of the Tax Court on March 23, 2006. Defendant in that division (here, the county) filed a Motion to Dismiss, and taxpayer filed a Motion for Summary Judgment. The magistrate, in a document entitled "Decision," denied both motions. Information on appealing to the Regular Division was included at the bottom of the document, and taxpayer appealed.
On May 4, 2007, Defendant in this division, the Department of Revenue (the department), filed a Motion to Dismiss for Lack of Jurisdiction. The motion asserted that, because all issues in the matter had not been disposed of at the Magistrate Division, the appeal was improper and the case should be remanded, notwithstanding the title of the document issued by the magistrate or the appeal rights that were included with it.
This court, in an order dated July 9, 2007, agreed with the department that the substantive issues had not been decided in the Magistrate Division and concluded that the case presented a variety of procedural questions, all of which could be obviated by specially designating the case to the Regular Division. The court then specially designated the matter on its own motion and denied the department's motion to dismiss. The county made a motion to intervene in the matter, which the court granted on August 2, 2007. The matter went to trial on November 15, 2007.
At trial, the county presented evidence in support of its theory of valuation in the form of an appraisal report. The *Page 391 
report was admitted into the record and the appraiser, Kenneth S. Collmer, offered testimony in support of the county's asserted values. The appraisal report was based on Collmer's evaluation of four sales of similar property in the same area as taxpayer's property and three sales of bare land in the area.
To support her theory of value, taxpayer offered her opinion of the property's value in the form of her own testimony. Taxpayer did not submit an appraisal report or appraiser testimony. At the close of taxpayer's case-in-chief, the county made a motion for dismissal at trial pursuant to Tax Court Rule (TCR) 60, which the court denied.
 III. ISSUE
What are the respective real market values of the land and addition for the 2005-06 tax year?
 IV. ANALYSIS
The value of property is ultimately a question of fact.Chart Development Corp. v. Dept. of Rev., 16 OTR 9, 11
(2001). The party seeking affirmative relief has the burden of proof and, initially, the burden of going forward with the evidence. ORS 305.427.[1] The court "has the responsibility of making an original, independent, and de novo
determination of value." Chart Development,16 OTR at 11 (citing Mid Oil Co. v. Dept. of Rev., 297 Or 583,588, 686 P2d 1020 (1984)).
A property's RMV is "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205(1). There are three methods used to calculate RMV: the cost approach, the income capitalization or income approach, and the sales comparison approach, also known as the sales or market approach. Allen v. Dept. of Rev.,17 OTR 248, 252 (2003). See also OAR 150-308.205-(A)(2) (2005). Taxpayer has the burden of proof under ORS 305.427, which "requires that a taxpayer who is dissatisfied with an action of a county * * * must establish by competent evidence *Page 392 
what the appropriate value of the property was as of the assessment date in question." Woods v. Dept. of Rev.,16 OTR 56, 59 (2002).
1. Taxpayer provided little in the way of testimony or exhibits[2] to support her position, mainly relying on her opinion of the property's value. That opinion was sufficient to defeat the county's TCR 60 motion for dismissal at trial.See Freitag v. Dept. of Rev., 19 OTR 37, 43 (2006) (noting that with nothing contrary to taxpayer's opinion of value in the record, the court must deny such a motion). The county then put on its case, which included an appraisal report prepared by Collmer and his testimony. The testimony of Collmer and the appraisal report place the value of the land at $238,000 and the value of the addition at $36,000, with the total value of the property at $485,000.[3] The appraisal report considers each of the valuation approaches: the cost approach, the income approach, and the sales comparison approach; however, the income approach was not actually utilized due to lack of rentals in the area. According to the appraisal report, Collmer relied on the cost approach in determining exception value for the addition and relied on the sales comparison approach to determine the value of the land.[4]
The county submitted evidence of three land sales ranging from $132,000 to $185,000. At the trial, Collmer testified that the land sales submitted were of property that was similar to taxpayer's property — nearby and with similar restrictions. He testified that his analysis of the land sales supported an RMV of $120,000 for a single lot in that area. Collmer went on to state that in his opinion, taxpayer's land *Page 393 
could support two home sites. He based that opinion in part on his analysis and in part on a discussion he had with a City of Portland planner. The potential for a second building site on the property prompted Collmer to value the land at $238,000.
2. The general rule in Oregon is that "`an owner may always testify about the value of property without demonstrating special knowledge, skill, or training, even if the owner has little knowledge of the value of the property.'"Freitag, 19 OTR at 45 n 8 (quoting Dept. ofTransportation v. El Dorado Properties, 157 Or App 624,635-36, 971 P2d 481 (1998) (internal citation omitted). Such unsubstantiated testimony, by itself, is rarely sufficient for a taxpayer to meet the burden of proof under ORS 305.427 in a valuation matter. Id. at 44. A "taxpayer not relying on an expert appraisal must offer something beyond his own testimony and theories about the law of property valuation to succeed at trial * * *." Id. Accordingly, the court concludes that taxpayer has not met her burden under ORS 305.427
to establish that the RMV of the addition and land is less than that asserted by the county.
Nevertheless, taxpayer advances several other arguments in her post-trial memorandum, which the court will address briefly below.
A. Regular Division de novo review
Three of taxpayer's arguments center around the processes of special designation and de novo review in the Regular Division. Specifically, taxpayer takes issue with the court's refusal to address perceived shortcomings in the county's assessment methods and in the Magistrate Division process. In addition, taxpayer asserts that the court should have considered the documents and exhibits in the electronic file that was transferred to the Regular Division when the case was specially designated.
1. Acts of the county prior to the appeal
3. Taxpayer complains that the errors of the county in appraising her property have not been addressed, in particular its method for determining the exception value of the *Page 394 
addition. In support of her theory, taxpayer cites ORS 305.275, which states, in part, that "[a]ny person may appeal under this subsection to the magistrate division of the Oregon Tax Court * * *" if the person "is aggrieved by and affected by an act, omission, order or determination of * * * [a] county assessor." Taxpayer is mistaken in her reliance. ORS 305.275, by its terms, applies to appeals that may be brought to the Magistrate Division of the Oregon Tax Court. The standards for appeal to the Regular Division differ from those of the Magistrate Division. Cf. ORS 305.501, ORS 305.425.
4. But even if, for the sake of analysis, the court sets aside taxpayer's reliance on that statute, taxpayer's position is not well-taken. The proper way to prove that the county has made an error of the type that would result in aggrievement to taxpayer is to prove that the value arrived at by the county is incorrect, usually through the use of an appraisal, seeFreitag, 19 OTR at 44, not by criticizing the county's position. Woods, 16 OTR at 59. Finally, the denovo nature of Regular Division proceedings corrects irregularities in the prior proceedings. Rivera v. Dept. ofRev., 16 OTR 60, 62 (2002) (citing Freightliner Corp.v. Dept. of Rev., 5 OTR 270, 279-90 (1973)).
2. Procedural errors at the Magistrate Division
Taxpayer also takes issue with perceived errors that occurred in the Magistrate Division. Taxpayer relies on the following language from Freitag, 19 OTR 144, 148 (2006) to support her position:
 "In cases where the magistrate has dismissed an appeal in accordance with its established procedures, an entirely new proceeding in the Regular Division that ignored any procedural defects in the Magistrate Division would, in essence, render meaningless the requirement that, in most cases, matters first be heard in the Magistrate Division."
Taxpayer fails to recognize that the court was referring to a situation in which a case is dismissed at the Magistrate Division because of a failure to follow the Magistrate Division rules or failure to comply with a magistrate's order. That *Page 395 
does not mean, as taxpayer asserts, that any perceived procedural defect in the Magistrate Division will be reviewed in the Regular Division. Here, the procedural history of taxpayer's case was made somewhat more complicated by the issuance of what was, in substance, an order, but in form, an appealable decision; however, not only is it unclear whether such a distinction would affect the standard of review in the Regular Division, indeed, any distinction was rendered moot by the special designation of the case under ORS 305.501. After the matter was specially designated, the case proceeded denovo as set forth under ORS 305.425, giving taxpayer a new opportunity to be heard. Appeals or special designations to the Regular Division are de novo, meaning that the case is tried anew, ORS 305.425, and "the de novo nature of this proceeding is considered to afford taxpayer adequate relief against prior irregularities. Rivera, 16 OTR at 62.
 3. Transfer of the "electronic file" to the Regular Division
6,7. Taxpayer contends that the court should have considered the exhibits and documents that she filed in the Magistrate Division case. To support that assertion, she relies on TCR 1 C(2), which states that "[w]hen a case has been specially designated, * * * the electronic file shall be converted to a paper file and transferred to the Regular Division * * *." Taxpayer misunderstands the difference between the file
and the record. The electronic file was transferred to the Regular Division, however, the Magistrate Division is not a court of record, Harelson v. Schneyder, 16 OTR 123, 125
(2003); ORS 305.430(1). Accordingly, no record could be transferred. In addition, before exhibits and documents may be considered in the Regular Division, they must be admitted into the record under the Oregon Evidence Code (OEC). ORS 305.425(3). The documents and exhibits in the electronic file of the Magistrate Division were not offered and admitted.[5]
B. The trial
Taxpayer also makes three arguments related to the trial in the Regular Division. Specifically, she asserts that *Page 396 
she was unfairly prejudiced because the county did not disclose that Collmer would testify at the trial, that Collmer's testimony was false and misleading, and that the court unfairly required her to pose questions to herself when giving her direct testimony.
1. Disclosure of witnesses before trial
8. Taxpayer claims she was unfairly prejudiced at the trial because she was not aware that Collmer was going to be present and testify. She states no authority to support that contention; however, the court notes that the county provided taxpayer with an appraisal report prepared by Collmer in advance of trial, as required by TCR 56 B(2). It should have been clear to taxpayer, had she familiarized herself with the Oregon Evidence Code, that the county would have to authenticate the appraisal report in order for it to be admitted into evidence. OEC 901. Typically that authentication would be by the author of the appraisal. Such was the case here.
2. Testimony of Collmer
9. In her post-trial brief, taxpayer complains that Collmer provided false and misleading testimony. The time and place to test and rebut testimony that one believes is incorrect is at trial, and the most effective method to do so is either through cross-examination or rebuttal testimony of one's own expert witness. This taxpayer did not do. Her cross-examination of Collmer did not serve to show a value for the property in question other than that asserted by the county. Further, taxpayer called no expert but instead chose to be her own witness, and, not being qualified as an expert, she was unable to provide testimony to rebut that of Collmer.
3. Procedure for examination of witnesses
10. Finally, taxpayer protests that the court required her to pose questions to herself when she called herself as a witness. The court has "broad discretion to control the order and presentation of evidence." State v. Cox, 337 Or 477,490, 98 P3d 1103 (2004) (citing OEC 611(1)). Direct examination of *Page 397 
witnesses is conducted in a question and answer format,see OEC 611, in order to allow the opposing party to interpose objections to questions before they are answered. If conducted in a narrative format, it would be nearly impossible to interpose objections.
 V. CONCLUSION
Taxpayer did not meet her burden of proof under ORS 305.427 as to the RMV of the land or the addition. Now, therefore,
IT IS THE DECISION OF THE COURT that the value of the land is determined to be $238,000;
IT IS FURTHER DECIDED that the value of the addition is determined to be $36,000; and
IT IS FURTHER DECIDED that the county's request for fees pursuant to TCR 46 will be decided separately.
Costs are awarded to the county.
[1] All references to the Oregon Revised Statutes (ORS) are to the 2005 edition.
[2] Although she evidently had several exhibits prepared, they were not exchanged with the county pursuant to TCR 56, and were accordingly not admitted into the record.
[3] The county claims the lesser amount of $481,750 (the roll value of the land and original residence structure plus $36,000 for the addition).
[4] Although the composite value of the land and the residence structure as improved is not in dispute, Collmer did include four comparable sales of land with residences, as well as the March 2005 sale of the subject property, in the appraisal report. Those sales, all occurring within a year of the January 1, 2005, assessment date, range from $472,300 to $527,500, with adjustments for differences between those properties and the subject property. The composite value asserted by the county is $481,750.
[5] The Oregon Evidence Code does not apply to proceedings in the Magistrate Division. ORS 305.501(4)(a). *Page 398