IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| MONTY E. MONCRIEF, | ) | |
| | ) | |
| Plaintiff, | ) | TC-MD 200082N |
| | ) | |
| v. | ) | |
| | ) | |
| CURRY COUNTY ASSESSOR, | ) | |
| | ) | |
| Defendant. | ) | **DECISION** |

Plaintiff appeals an Order of the Curry County Board of Property Tax Appeals (BOPTA), dated March 4, 2020, concerning property identified as M38572 (subject property) for the 2019-20 tax year. A trial was held on August 18, 2020, by telephone. Plaintiff appeared and testified on his own behalf. John Huttl, Curry County Counsel, appeared on behalf of Defendant. Kiley Wegner (Wegner), Defendant's appraiser, testified on behalf of Defendant. Plaintiff's letter and map, filed August 11, 2020 (referred to as Plaintiff's Exhibit 1), were admitted without objection. Defendant's Exhibit A was admitted without objection.

## I. STATEMENT OF FACTS

The subject property is a manufactured home located in the Port Crest LLC development park in Brookings, Oregon. (*See* Compl at 3; Ptf's Ex 1 at 2.) Plaintiff leases the land from Port Crest LLC. (Compl at 4.) The subject property is a structure consisting of 396 square feet of living space, a 218 square-foot enclosed porch, a 548 square-foot deck, and a 644 square-foot attached garage.[1] (Def's Ex A at 1.) The subject property is located on a corner lot and has partial ocean views. (Ptf's Ex 1 at 2; Def's Ex A at 1.) The subject property's 2019-20 roll

---

[1] Based on its specifications, the subject property — along with the other homes in Port Crest — is not a typical manufactured home and in some sense is in its own class. The court refers to it as a manufactured home for lack of a better term. As discussed below, both parties relied solely upon comparable sales from within Port Crest.

values are: $155,910 real market value, $153,880 maximum assessed value, and $127,440[2] assessed value. The BOPTA sustained the roll values. Plaintiff requests a real market value of $100,000. (Compl at 1.) Defendant asks the court to sustain the roll real market values.

Plaintiff testified that because Defendant incorrectly listed his manufacture date as 2017, instead of 2016, his taxes should be adjusted downward. Plaintiff presented a handwritten map in support; the map shows information about other properties within the Port Crest LLC park including the house numbers, date of manufacture,[3] and the taxes due in 2019. Plaintiff noted the degree of variation in the tax burden between properties located within the same park. Plaintiff attributed that variation to the date of manufacture and argued that because Defendant has the wrong date of manufacture for the subject property, an adjustment based on the 2016 manufacture date is warranted. Plaintiff testified that the subject property was constructed in 2016 and "began depreciating" from that date. Plaintiff did not provide any independent evidence to support a 2016 rather than a 2017 manufacture date.

Plaintiff testified that property #20 located across the street from the subject property sold for $100,000 in 2019 after being listed for four years. He testified that #21 was a single-wide home that sold for $60,000, #10 sold for $25,000, and another property within the park sold for $40,000. Plaintiff did not present any more information about the sales or the characteristics of the properties.

Wegner testified she has worked as an appraiser for Defendant for six years. She is a licensed by the state of Oregon in mass appraisal. She prepared the appraisal report submitted by

---

[2] The subject property is also subject to a partial exemption available to veterans under ORS 307.260 which reduces the assessed value.

[3] Plaintiff testified that the years on his map were based on a print-out he received from Defendant. He noted that the dates on each property represented either the date of manufacture or the date of first sale.

Defendant in this case. (*See* Def's Ex A.) Wegner testified that 2017 was the first year the subject property was appraised and placed on the tax roll and not necessarily the year of manufacture. (*See id.* at 1.) She testified that, generally, the owner of Port Crest LLC notifies Defendant when a new property is added so that it can appraise it and add it to the tax roll.

Wegner testified that she used the sales comparison approach to value the subject property. The appraisal report lists three comparable sales, all located within the Port Crest LLC park. Comp #1 sold on April 3, 2019, for $170,000. (Def's Ex A at 2.) Wegner testified that this sale was the most comparable to the subject property and only required minor adjustments. It had distant ocean views and an enclosed porch like the subject property. After adjusting for size and age Wegner arrived at an adjusted sale price of $183,700 for Comp #1. (*Id.* at 5.) Comp #2 sold for $275,000 on April 4, 2019. (*Id.* at 3.) Comp #2 was newer, had better views, and was larger than the subject property. (*Id.*) After adjusting for those differences, Wegner arrived at an adjusted sale price of $182,600 for Comp #2. (*Id.* at 5.) Comp #3 sold for $215,000 on November 8, 2016. Comp #3 had better ocean views but was older than the subject property—it was built in 2013. (*Id.* at 4.) Wegner testified that the pending sale for Comp #3 closed on August 10, 2020, for $220,000. (*See also id.*) After adjusting for time of sale, size, view and age, Wegner arrived at an adjusted sale price of $215,153 for Comp #3.[4] (*See id.* at 5.) Wegner used Oregon's cost factor book to make most adjustments. Wegner testified that she used a rough paired sales analysis to determine the value of ocean views.

Defendant's appraisal report shows that the subject property sold for $145,000 on June 14, 2017. (Def's Ex A at 5.) Based on that sale, Wegner applied a time trending adjustment and arrived at an indicated real market value of $163,459. (*Id.*)

---

[4] All the adjustments to Comp #3 were made based on the 2016 sale for $215,000. (Def's Ex A at 5.)

In rebuttal, Plaintiff testified that all of Defendant's comparable sales were sold by the park which leases the land. He speculated that the park can obtain a higher price for the structures based on its ability to offer reduced lease prices thus inflating the sale price as compared with sales by tenants. Plaintiff presented no evidence to support his claim that the park was offering lease reductions to purchasers or that such arrangements are typical in the industry.

## II. ANALYSIS

The issue is the subject property's real market value for the 2019-20 tax year. In general, all real and personal property located within this state is subject to assessment and taxation. ORS 307.030(1).[5] If a "manufactured structure is owned separately and apart from the land upon which it is located, [Defendant] shall assess and tax the manufactured structure as personal property[.]" ORS 308.875.[6] "Real market value is the standard used throughout the ad valorem statutes except for special assessment." *Richardson v. Clackamas County Assessor*, TC-MD 020869D, 2003 WL 21263620 at *2 (Or Tax M Div Mar 26, 2003).

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

ORS 308.205(1). The assessment date for the 2019-20 tax year was January 1, 2019. *See* ORS 308.007; 308.210(2) ("manufactured structures assessed as personal property shall be shown on

---

[5] The court's references to the Oregon Revised Statutes (ORS) are to 2017.

[6] "All personal property is to be 'assessed for taxation each year at its situs as of the day and hour of assessment prescribed by law' under ORS 308.105; however, personal property is exempt from taxation if it is 'held by the owner * * * for personal use, benefit or enjoyment.' ORS 307.190(1). Although that statute renders much personal property exempt from taxation, the exemption does not apply to '[m]anufactured structures as defined in ORS 446.561.' ORS 307.190(2)(d)." *Gall I v. Dept. of Rev.*, 19 OTR 188, 192 (2006), *aff'd*, 343 Or 293, 170 P3d 558 (2007)

the assessment roll as of January 1 * * *.").

Real market value shall be determined by the methods and procedures adopted by the Oregon Department of Revenue. ORS 308.205(2). By rule, three approaches to value must be considered: (1) the cost approach; (2) the sales comparison or comparable sales approach; and (3) the income approach. OAR 150-308-0240(2)(a). Even though all three approaches must be considered, all three may not be applicable to the valuation of the subject property. The applicable valuation approach is a question of fact that will be determined on the record. *Pac. Power & Light Co. v. Dept. of Revenue*, 286 Or 529, 533, 596 P2d 912 (1979). Plaintiff, to the extent he presented any evidence of value, appeared to use the sales comparison approach. Defendant also used that approach.

Plaintiff, as the party seeking affirmative relief, bears the burden of proving his case by a preponderance of the evidence. ORS 305.427. Preponderance of the evidence means "the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). Evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof. *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). "[I]t is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev.*, 18 OTR 324, 332 (2005) (internal quotation marks omitted). "Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents and licensed brokers." *Etzger v. Clatsop County Assessor*, TC-MD 120534D, WL 5350257 at *3 (Or Tax M Div Oct 30, 2012). In using the sales comparison approach "only actual market transactions of property comparable to the subject, or adjusted to be comparable, may be used." OAR 150-308-

0240(2)(c). All sales used must be "verified to ensure they reflect arms-length market transactions." *Id.*

A.     *Plaintiff's Evidence*

Here, Plaintiff did not present an appraisal report or any testimony from a licensed appraiser. "[A]n owner may always testify about the value of property without demonstrating special knowledge, skill, or training, even if the owner has little knowledge of the value of the property." *Leaper v. Dept. of Rev.*, 19 OTR 388, 393 (2008) (internal quotation marks omitted). However, "unsubstantiated testimony, by itself, is rarely sufficient for a taxpayer to meet the burden of proof under ORS 305.427 in a valuation matter." *Id.* Plaintiff's testimony regarding sales in the park suggested a value range of $25,000 to $100,000. The court appreciates the effort Plaintiff made to present evidence to the court that would enable it to make a value determination. Unfortunately, without dates, information about the conditions of sale, or the characteristics of the properties, the court does not find Plaintiff's sales to be persuasive evidence of value.

B.     *Defendant's Appraisal Report*

Defendant's appraisal report considered three comparable sales and the sale of the subject property in 2017. The comparable sales are all similar properties within the same park. Wegner made appropriate adjustments for the characteristics of each property. Defendant's evidence suggests a range in value from $182,600 to $215,153—higher that the roll real market value of $155,910. The court agrees that Comp #1 with an adjusted value of $183,700 is the most comparable to the subject property. The court also finds the 2017 adjusted sale of the subject property—indicating a real market value of $163,459—helpful but less persuasive being further in time from the assessment date. *See Kem v. Dept. of Rev.*, 267 Or 111, 514 P2d 1335 (1973) (a

recent voluntary sale of the subject is persuasive evidence of value). Overall, the court finds enough evidence to support Defendant's request to sustain the roll real market value, particularly considering the relative lack of evidence provided by Plaintiff.

C. *Plaintiff's Other Arguments*

Plaintiff made four additional arguments which the court will briefly consider: 1) Defendant failed to consider the value impact of sales by tenants as opposed to sales by the park; 2) Defendant did not appropriately apply depreciation; 3) Defendant failed to consider the effect of recent legislation on the title and use of the subject property which impaired its value; and 4) Defendant erred in finding the subject property's age as 2017 construction thus affecting the taxable value.[7] The court is mindful that Plaintiff bears the burden of proof to provide competent evidence and that "it is not enough for a taxpayer to criticize a county's position." *Poddar*, 18 OTR at 332.

First, Plaintiff argued that Defendant failed to consider his position as a tenant and that the comparable sales used in Defendant's appraisal report were all sales by the park. OAR 150-308-0240(4) provides that the "[r]eal market value for all personal property * * * must take into account the location and place in the level of trade of items of property in the hands of manufacturers, producers, wholesalers, distributors, retailers, users, and others." It is plausible that a secondary sale by a tenant might not command the same price as the park owner. If Plaintiff had provided some evidence regarding the difference in prices tenants were able to obtain as compared with the park owner that might have persuaded the court. Unfortunately, Plaintiff did not give the court enough evidence that would allow the court to make a reasonable adjustment for this difference.

---

[7] Plaintiff also disputes Defendant describing his enclosed porch as an "elaborate enclosed porch" stating "there is nothing elaborate about it." No evidence was presented regarding the differences between elaborate enclosed porches and other kinds of porches or the value attributable to the differences.

Second, Plaintiff argued that the subject property was constructed in 2016 and "began depreciating" from that date. Because Defendant incorrectly listed his manufacture date as 2017, instead of 2016, his real market value should be adjusted downward. Oregon law permits assessors to consider depreciation when determining the real market value of a manufactured structure. *See* ORS 308.885.[8] However, in *Stevens v. Klamath County Assessor*, TC-MD 010429D, 2002 WL 833359 at *2 (Or Tax M Div Apr 12, 2002), the court rejected the taxpayer's depreciation analysis in preference for the sales comparison approach concluding that "[d]epreciation, if any, of a manufactured home is captured in the sale price (value) negotiated by the parties." Even if the court were to consider a depreciation adjustment, Plaintiff did not provide any evidence to support depreciation of $40,000 since his purchase date in 2017.

Third, Plaintiff argued that recent legislation has created a gray area around titling of manufactured structures such as the subject property, negatively impacting the likely sale price. He cited SB 420 (2019) and HB 2333 (2019). Both bills concern regulation and titling of RVs and manufactured structures. Plaintiff did not explain how the bills apply to the subject property or present evidence of how these laws affected the subject property's real market value. The sales Defendant provided from 2019 and 2020 did not suggest marketable title was impaired.[9]

Fourth, Plaintiff theorized that, based on the data he obtained about other properties within the park, the improvement's age is the most significant variable affecting taxable value. He asserted that correcting the age of the subject property from 2017 to 2016 should result in a tax savings to him. Certainly, the age of a property may affect the taxable value. However, the connection is attenuated.

---

[8] "Each year that a physical appraisal is not made of a manufactured structure, the assessor shall consider the value of the manufactured structure, and shall apply uniform depreciation or trending factors, if necessary, to arrive at the real market value of manufactured structures of a like class." ORS 308.885.

[9] *See also* HB 2333 § 2(2) (2019) (providing that Oregon Department of Transportation may provide titling of "park model recreational vehicles" provided they are not permanently affixed to the land).

In Oregon, the assessed value or taxable value *i.e.* the value used to calculate the tax assessment, is the lesser of real market value or maximum assessed value. ORS 308.146(2). Maximum assessed value may not increase more than three percent per year. *See* ORS 308.146(1). The maximum assessed value of new property is the product of the real market value of the new property multiplied by the "changed property ratio" or CPR. ORS 308.153(1). The CPR is "the average maximum assessed value over the average real market value for the assessment year." ORS 308.153(b). By contrast, the real market value fluctuates with the market. Lack of uniformity has been a feature of Oregon's property tax system since Measure 50 (creating maximum assessed value) was adopted:

> "in one sense [maximum assessed value] is somewhat artificial or arbitrary. That is inherent in the overall scheme of section 11. The concept may, over time, result in various degrees of nonuniformity in the property tax system. Section 11(18) contemplates this and excuses itself from complying with other constitutional provisions requiring uniformity, specifically Article IX, section 1 and Article 1, section 32."

*Ellis v. Lorati*, 14 OTR 525, 535 (1999).

To the extent that Plaintiff requests a real market value adjustment based on the property's age, the court agrees that age of property is the type of item that an appraiser properly adjusts for when determining real market value. *See* Appraisal Institute, *The Appraisal of Real Estate* 391, 420 (14th ed 2014). Defendant's appraiser adjusted the comparable sales based on the age of the improvements. (*See* Def's Ex A at 5.) Plaintiff produced no evidence to support an age adjustment to 2016 or supporting an amount beyond what was already considered by Defendant's appraisal report. To the extent that Plaintiff argues that the subject property was added to the rolls in the wrong year and thus received a less favorable CPR, the court finds that there was no evidence presented to support a finding that the subject property was existing or taxable in the county "on the assessment date" of January 1, 2016. *See* ORS 308.153(3).

### III. CONCLUSION

After careful consideration, the court concludes that Plaintiff has failed to meet his

burden of proof regarding the subject property's 2019-20 real market value. Accordingly,

Plaintiff's appeal must be denied. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied.

Dated this _____ day of December 2020.

_____
ALLISON R. BOOMER
PRESIDING MAGISTRATE


*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within 60 days after the date of this Decision or this Decision cannot be changed. TCR-MD 19 B.*

*Some appeal deadlines were extended in response to the Covid-19 emergency. Additional information is available at https://www.courts.oregon.gov/courts/tax*

*This document was signed by Presiding Magistrate Allison R. Boomer and entered on December 8, 2020.*