116                    July 22, 2022                    No. 6

IN THE OREGON TAX COURT
REGULAR DIVISION

Cathy J. SWANEK,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Defendant,*

*and*

LANE COUNTY ASSESSOR
*Defendant-Intervenor,*

(TC 5423)

In this property tax case, Plaintiff sought a reduction in the real market value (RMV) of her properties due to periodic shooting occurring on neighboring federal land. Plaintiff separately asked the court to create a new class of special assessment. The Lane County Assessor (assessor) presented an appraisal concluding that Plaintiff's property was worth more than the current RMV on the tax rolls. Taxpayers seeking a value reduction below the RMV on the tax roll bear the burden of proof and therefore must provide competent evidence, such as appraisal reports and testimony by licensed professionals. ORS 305.427. The court concluded that the assessor carried her burden of proving a value nigher than that shown on the roll, and that Plaintiff did not carry her burden of proving any reduction. The court also concluded that only the legislature is authorized to create a new class of property for assessment purposes. The court therefore held ordered that the RMV on the roll be increased to value the assessor proved at trial.

Trial was held February 1, 2022, in the courtroom of the Oregon Tax Court, Salem.

Cathy J. Swanek argued the cause *pro se*.

Sebastian Tapia, Lane County Counsel, Eugene, argued the cause for Defendant-Intervenor Lane County Assessor.

Decision rendered July 22, 2022.

**ROBERT T. MANICKE, Judge.**

## I.   INTRODUCTION

On appeal from the Magistrate Division, Plaintiff brings this property tax matter concerning her two contiguous parcels of property in rural Lane County, identified as Accounts 1205754 (Lot 1202) and 1446879 (Lot 1203).

Defendant Department of Revenue (department) initially was the sole defendant by operation of ORS 305.501(1). The Lane County Assessor (assessor) intervened as a defendant early in the case, and the department tendered defense to the assessor and did not participate in trial.

Plaintiff's complaint is generally styled as an appeal of the property tax assessment of the property for tax year 2019-20. Plaintiff asks the court to reduce the property's real market value to account for frequent target shooting on neighboring land owned by the federal government which, among other things, resulted in the shooting and wounding of her son on her property in 2019. However, Plaintiff seeks relief beyond a reduction in real market value. Plaintiff also asks the court to consider her property for any applicable exemption or special assessment programs for which the frequent target shooting could make her property eligible, including "act of God" relief. Finally, she asks the court to exercise its equitable powers, either to simply reduce the value of her property or to create a new class of special assessment that she describes as a "residence safety zone."

The assessor asks the court to increase the real market value, from the amount determined by the Board of Property Tax Appeals order from which Plaintiff appealed, to an amount conforming to the evidence presented at trial.

## II.   FACTS

Lot 1202 is a 4.6-acre parcel that is improved by a residence. The residence is 3,540 square feet and includes four bedrooms and four and a half bathrooms and has an attached three-car garage. Lot 1203 is a 37.18-acre parcel improved by a 2,407-square-foot residence, which consists of two bedrooms, one and a half bathrooms, with an attached garage and unfinished storage space.[1] The lots share a four-acre pond that is fed by Bear Creek. Both parcels are bounded by a federal Bureau of Land Management (BLM) access road to the north. Lot 1203 is bounded by federally owned and managed land to the west and private timber land to the south. Lot 1202 is zoned for rural residential use.

---

[1] Plaintiff apparently disputes this characterization, stating that "[a]ppraiser claims Lot 1203 has 8 garages worth $15,000 each. *** [T]he building has always been listed as an agriculture building. We have never used it for cars."

Lot 1203 is zoned for Impacted Forest Land and is steeply sloped and forested.

For Lot 1202, the Assessor initially determined a real market value of $1,001,755, that was subsequently reduced to $800,000 by the Lane County Board of Property Tax Appeals (BOPTA); its maximum assessed value is $429,828. For Lot 1203, the Assessor initially determined a real market value of $1,072,497, that was subsequently reduced to $847,264 by the BOPTA; its maximum assessed value is $331,425. Plaintiff appeals from a Magistrate Division decision sustaining the values determined by the BOPTA.

A.  *Plaintiff's Evidence*

At trial, Plaintiff testified that her use of the property is significantly curtailed by the shooting that occurs on the neighboring BLM-managed land to the west. She testified that her son was shot and almost killed by a stray bullet originating from the BLM land in July 2019. In support of her testimony, Plaintiff submitted a police report documenting the shooting of her son. The police report states that "[o]n 7-29-2019 I was advised that Swanek had been struck by a bullet while working on his families [sic] property off Lake Forest Drive on 07-27-19 at about 1700 hours." The report goes on to describe the officer's observations including seeing an area near a spur road with spent shell casings and broken bottles with no backstop or other barrier to prevent bullets from traveling to the valley below.

Plaintiff testified that at times the shooting is loud enough for her to hear the bullets hitting metal nearby. Plaintiff submitted numerous letters she had written to BLM officials and elected local and federal representatives attempting to address the shooting onto the property and proposing that a "Residence Safety Zone" be established around private residences abutting BLM land. Plaintiff also submitted BLM and Oregon Target Shooting regulations, which she testified are inadequate and are not being appropriately enforced. Plaintiff asserted that she cannot use the property to produce income because of the liability resulting from the shooting onto the land.[2]

---

[2] Plaintiff testified that she had to shut down her horse stabling operation due to the shooting and that she was unable to proceed with her plans to establish

Plaintiff identified other conditions affecting the value of the property: noise and garbage caused by traffic on the access road to the north, damage caused by beavers that chew through pipes and electrical lines on the property, and issues with flooding and erosion. Plaintiff stated that she has spent $23,000 dredging and hauling silt build-up from the pond on the property to prevent flooding. Plaintiff testified that the dredging operation must be performed once a decade at her expense. Plaintiff asserted that the property lacks a well; as a result, she spent $11,000 to develop a spring that runs dry in the summer, and she incurred the additional expense of tanking in potable water. Plaintiff identified other conditions typical on rural property such as issues with cell service, electricity outages, and snow.

Plaintiff did not submit an appraisal report or ask the court to find any specific value. She testified that she could not find a real estate appraiser who would prepare an appraisal with a negative adjustment for the recurring target shooting problem. In her post-trial brief, she expressed frustration that "Lane County refused to provide an appraiser able to consider and value our two issues."

B.  *The Assessor's Evidence of Value*

The assessor's witness, a registered appraiser with more than 10 years' experience who is employed by the assessor, prepared an appraisal report for each tax lot and testified regarding her report at trial. The appraiser testified that the highest and best use is the current use—in the case of both lots, as residential property. She considered the income, cost, and comparable sales approaches to value. OAR 150-308-0240(2)(a). She testified that the income approach was considered but not "developed" because there is no market for rentals for this type of custom-built rural residential property. The appraiser prepared a cost approach analysis and determined a value indicator of $991,992 for Lot 1202 and $1,029,657 for Lot 1203.[3] She gave the cost approach little weight because the relatively low sample size within

a riding academy for handicapped children and set up a bed and breakfast on the property.

[3] At trial, the assessor's appraiser identified some corrections to the table on concerning comparable land sales used in their cost approach. These changes do not alter her conclusion of value under that approach.

the rural area makes estimating depreciation difficult. The appraiser testified that the sales-comparison approach is considered the most reliable method valuing residential property. After considering three comparable sales for each tax lot, she made adjustments where data were available to do so. She then weighted the comparable properties to reach her sales comparison indicator of value. The appraiser ultimately concluded to a value under the sales comparison and cost approaches of $1,000,000 for Lot 1202 and $1,040,000 for Lot 1203. Commenting on Plaintiff's testimony, the appraiser testified that the pond should be considered an "amenity" for fire safety reasons, and that in her experience, bordering on BLM-managed land generally is considered an amenity and is advertised accordingly.

## III.   ISSUES

A.   What is the real market value of Lots 1202 and 1203 for tax year 2019-20?

B.   May the court grant any of the other forms of relief Plaintiff seeks?

## IV.   ANALYSIS

A.   *Real Market Value*

This court has jurisdiction to determine the real market value of property in a property tax dispute. *See* ORS 305.412.[4] Real market value, for purposes of property tax assessment, is defined as follows:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

ORS 308.205(1). The real market value of property is determined as of the January 1 assessment date preceding the tax year, which commences July 1. ORS 308.210(1); ORS 308.007(1)(b). The value of property is ultimately a question of fact. *Chart Development Corp. v. Dept. of Rev.*, 16 OTR 9, 11 (2001). As Plaintiff acknowledged in her complaint, the

---

[4] The court's references to the Oregon Revised Statutes (ORS) are to the 2017 edition.

party seeking affirmative relief has the burden of proof. ORS 305.427. This means that Plaintiff bears the burden of showing that the real market value of the property should be lower than the value concluded by the BOPTA. Likewise, an assessor seeking an increase above the BOPTA value bears the same burden to prove that the value should be increased over its current value. The court "has the responsibility of making an original, independent, and *de novo* determination of value." *Chart Development Corp.*, 16 OTR at 11 (citing *Mid Oil Co. v. Dept. of Rev.*, 297 Or 583, 588, 686 P2d 1020 (1984). To do so, the court must apply the law of evidence to the facts presented by each party.

    1.   *Plaintiff's evidence*

       Oregon courts have generally held that an owner is entitled to testify regarding the value of property. *Leaper v. Dept. of Rev.*, 19 OTR 388, 393 (2008); *Freitag v. Dept. of Rev.*, 19 OTR 37, 45 n 8 (2006); *Dept. of Transportation v. El Dorado Properties*, 157 Or App 624, 971 P2d 481 (1998). Here, Plaintiff testified regarding a variety of conditions that could negatively affect value. However, Plaintiff failed to present evidence that would enable the court to estimate an appropriate value reduction. Most of her testimony amounted to a critique of the assessor's appraisal report, but Plaintiff presented no appraisal report supporting her position. As this court has stated, "it is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the RMV of their property." *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002) (citing *King v. Dept. of Rev.*, 12 OTR 491 (1993)). "Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and competent testimony from licensed professionals such as appraisers, real estate agents and licensed brokers." *Yarbrough v. Dept. of Rev.*, 21 OTR 40, 44, (2012). Without such evidence, the court is unable to grant Plaintiff any relief. The court finds that Plaintiff has not carried her burden to prove a reduction in the property's real market value.

    2.   *The assessor's evidence*

       The assessor presented an appraisal report and testimony from a qualified appraiser in support of its requested

values. The assessor's appraisal report considered all three approaches to value, as the department's rules require. *See* OAR 150-308-0240(2)(a). The assessor's appraiser was available to testify regarding the report she prepared and explained her rationale for relying primarily on the sales-comparison approach and explained her adjustments and methodology. Plaintiff raised concerns regarding the impact of the shooting and various conditions on the property but failed to rebut the assessor's appraisal report with persuasive evidence of her own.

### 3. *Conclusion as to value*

Plaintiff claims that the county "does not acknowledge that shooting from Lane County and BLM controlled forestland and the BLM public access road running through our property negatively affects the use/enjoyment and ability to generate necessary income from such property." The county BOPTA, an informal tribunal that is not required to apply evidentiary rules, reduced the aggregate real market value of the two lots by approximately 20 percent. Dissatisfied, Plaintiff appealed and knowingly took on the burden of proving to what degree the shooting or other factors affected the value, and what value the property actually has. Plaintiff has not carried this burden. Her attempt to find fault with the assessor for not directing her to an appraiser during this litigation is unavailing. In the absence of countervailing evidence, the court finds that the assessor's appraisal is the best evidence of value.

### B. *Other Relief Requested*

Plaintiff otherwise seeks relief that neither the Lane County Assessor, the Oregon Department of Revenue, nor any court is authorized to provide. Plaintiff did not argue at trial the position stated in her complaint that the shooting activity constitutes an "act of God" that would justify an abatement of tax under ORS 308.425 or a reduction in maximum assessed value under ORS 308.146. Had she done so, her claim would have suffered from the same absence of specific evidence of value reduction that caused her claim for a reduction in real market value to fail. Plaintiff has identified no other existing exemption or special assessment law

that would reduce her tax burden, nor is the court aware of one. *See* ORS 307; ORS 308A; ORS 321.257 to 321.390.

As for Plaintiff's request for general equitable relief or for adoption of a new exemption or special assessment program such as a "residence safety zone," the people of the state, through the Oregon Constitution, have entrusted only the legislature with authority to create new classifications that deviate from the existing property tax laws. *See* Or Const, Art IX, § 1 ("The *Legislative Assembly* shall, and the people through the initiative may, provide by law uniform rules of assessment and taxation. All taxes shall be levied and collected under general laws operating uniformly throughout the State") (emphasis added). Neither local governments nor state administrative agencies may do so on their own. *See also State ex rel. Pierce v. Slusher*, 119 Or 141, 152-53, 248 P 358 (1926) (the power of taxation "is a legislative power that cannot be exercised by the *** judicial branch of government"). The court understands that Plaintiff is primarily concerned with stopping the shooting onto her property. Although the court is sympathetic to the wounding of Plaintiff's son, the court's power to offer redress is limited to adjudicating property values by applying the rules of evidence and procedure, and otherwise addressing matters arising under the "tax laws of this state." ORS 305.412(1); ORS 305.410.

## V.   CONCLUSION

Now, therefore,

IT IS THE OPINION OF THIS COURT that Plaintiff's appeal must be denied; and

IT IS THE OPINION OF THIS COURT that, for tax year 2019-20, the real market value of Account 1205754 (Lot 1202) is $1,000,000 and the real market value of Account 1446879 (Lot 1203) is $1,040,000. Counsel for Defendant-Intervenor is directed to submit an appropriate form of judgment.